IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:14-CR-293-M |
| CHRISTIAN LLOYD CAMPBELL (04) | |

## FACTUAL RESUME

Defendant **Christian Lloyd Campbell (Campbell)**, the defendant's attorney Shamoil T. Shipchandler, and the United States of America (the Government), agree that the following accurately states the elements of the offense and the facts relevant to the offense to which the defendant is pleading guilty:

### Count One Elements:

In order for **Campbell** to be convicted at trial of Conspiracy to Commit Bribery Concerning a Local Government Receiving Federal Benefits, in violation of 18 U.S.C. § 371, the United States must prove each of the following essential elements[1] of the offense beyond a reasonable doubt:

*First.* That the defendant and at least one other person made an agreement to commit the crime of Bribery Concerning a Local Government Receiving Federal Benefits in violation of 18 U.S.C. § 666(a)(1)(B) and (a)(2), as charged in the indictment;

*Second.* That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

---

[1] Pattern Crim. Jury Instr. 5th Cir. 2.20 (2012).

Factual Resume – Page 1 of 7

*Third.* That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

The essential elements[2] of Bribery Concerning a Local Government Receiving Federal Benefits in violation of 18 U.S.C. § 666(a)(1)(B) and (a)(2) in the context of a conspiracy in violation of 18 U.S.C. § 371 are:

*First.* That John Wiley Price (Price) was an agent of the local government of Dallas County, Texas, as a member of the Dallas County Commissioners Court;

*Second.* That the Dallas County was a local government that received in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance;

*Third.* That Price corruptly solicited, demanded for the benefit of any person, accepted, and agreed to accept, anything of value from any person, or another conspirator corruptly gave, offered, or agreed to give anything of value to Price, with the intent to influence and reward Price in connection with any business, transaction, and series of transactions of Dallas County; and

*Fourth.* That the business transaction and series of transactions involved anything of value of $5,000 or more.

**Stipulated Facts:**

Campbell agrees and stipulates as follows:

1.  During a period of time that occurred between approximately January 2001 and on or about June 27, 2011, **Campbell** knowingly and willfully joined a conspiracy with Kathy Louise Nealy (Nealy), Price, and others, to corruptly provide benefits to Price and others, in violation of 18 U.S.C. § 666(a)(1)(B) and 666(a)(2), in the Dallas Division

---

[2] Pattern Crim. Jury Instr. 5th Cir. 2.37 B and C (2012).

Factual Resume – Page 2 of 7

of the Northern District of Texas, as charged in Count One of the indictment.

2. At all relevant times, Price was an agent of the local government of Dallas County, Texas, as a member of the Dallas County Commissioners Court.

3. **Campbell** was a commissioned account manager with Business S, a company that pursued, obtained, and performed under a contract with Dallas County for information technology (IT) services from approximately 2001 to mid-2004. In approximately mid-2004, a successor company, Business A, assumed the contract. Soon after, **Campbell**, after having transitioned to Business A, left its employ and formed his own company, Campbell Consulting Group (CCG). Through CCG, Campbell served as a consultant for businesses pursuing public and private sector contracts.

4. **Campbell** met Nealy while working at Business S in 2001. His responsibilities at that time involved assisting in the preparation and presentation of Business S's bid for the IT services contract. Since he did not have experience pursuing public sector contracts, a business associate introduced him to Nealy, who had been Price's campaign manager and who represented herself as someone with influence at Dallas County. Business S hired Nealy for her access to and influence with Price to persuade Price to sponsor Business S in the selection process. Nealy obtained inside and/or confidential information from Price that helped Business S pursue the contract and resolve issues during its performance. Business S was ultimately awarded the IT contract with Dallas County.

5. After Business S was awarded the IT services contract with Dallas County, **Campbell** continued to work with Nealy. He and Nealy contracted as a

Factual Resume – Page 3 of 7

lobbyist/consultant with some of the same companies, often with nearly identical contract terms.

6.    As **Campbell** transitioned from employment with Business S to CCG, **Campbell** realized that Nealy exerted improper influence over Price, by providing Price with things of value in exchange for actions that advanced her clients' interests. Campbell also became aware that:

a.    Demands from Nealy were the same as demands from Price, and included Nealy's repeated contract renewals, success fees, the hiring or promoting of certain individuals, and using certain minority subcontractors for other bids.

b.    These demands were made by Nealy and others on behalf of Price in exchange for Price to take or agree to take favorable actions or to refrain from negative actions concerning **Campbell's** and Nealy's business clients that had matters pending before the Dallas County Commissioners Court.

c.    **Campbell** understood that paying Nealy and acceding to her demands literally bought influence with Price.

7.    An example of **Campbell's** knowing and willful participation in the conspiracy, and the conspirators' commission of overt acts to further its unlawful objects and purpose, relates to Business B's pursuit of contracts with Dallas County related to, among other things, digitizing County records and countywide cashiering services. One such contract was the Dallas County Recording, Indexing, and Imaging RFP No. 2004-064-1485 (DCRIIS RFP), issued by the County in or about March 2004, seeking a vendor to digitize Dallas County Clerk's Office records. Bids were due from vendors on April 19, 2004. The following occurred:

a.    **Campbell** signed a consulting agreement with Business B shortly

before the company submitted its proposal to Dallas County that paid him $5,000 per month with a $25,000 success fee.

    b.    **Campbell** supported the use of Nealy in Business B's bid, ostensibly to provide marketing services, but in actuality to obtain the fruits of her improper influence over Price.

    c.    When the selection committee for the DCRIIS RFP recommended that the Dallas County Commissioners Court eliminate Business B from the bidding process, **Campbell** and Helena Tantillo (Tantillo), Business B's team leader, agreed that Nealy had to be paid or Business B's bid was doomed. **Campbell** and Tantillo agreed to increase **Campbell's** monthly payments by temporarily amending his Business B consulting contract and having him pay Nealy, realizing that Nealy would provide something of value to Price in exchange for Price's support. Specifically:

        (1)    On or about August 19, 2004, **Campbell** and Tantillo signed an amendment to **Campbell's** contract with Business B, increasing **Campbell's** monthly pay from $5,000 to $10,000 for the months of September and October 2004, so that **Campbell** could pay Nealy directly.

        (2)    Or about August 26, 2004, **Campbell** paid Kathy Nealy & Associates $7,500 by check number 1026 issued from **Campbell's** CCG account ****3066 at Bank of America, with "BP Invoice" written in the check's memo line. Upon depositing **Campbell's** $7,500 payment to her into her business account, Nealy immediately paid Price $2,500.

        (3)    **Campbell** emailed Nealy on or about September 21, 2004, requesting that Nealy provide him with a $7,500 invoice for her efforts on the DCRIIS project for Business B.

        (4)    On or about November 4, 2004, **Campbell** and Tantillo signed a second amendment to his contract with Business B, reverting **Campbell's** salary back to $5,000 per month beginning November 6, 2004, until approximately January 5, 2005.

    d.    Nealy's marketing component in Business B's bid was one factor initially rendering it uncompetitive. Dallas County directed Business B to remove the marketing component from Business B's

            bid at the "Best and Final Offer" stage. After Business B removed Nealy's marketing component, Nealy threatened the future of the bid. Campbell and Tantillo then devised alternative ways to pay Nealy in order to retain her influence over Price.

    e.    In exchange for benefits from Nealy, Price took several official actions that advanced Business B's interests, including but not limited to, voting on more than one occasion on behalf of Business B so that Business B could secure the contract.

    f.    At times, Nealy also provided confidential information to **Campbell** and to Business B that had been obtained from Price in order to give Business B a competitive advantage in the RFP process, including, but not limited to, the following:

        (1)    Nealy obtained and provided the DCRIIS selection committee's internal memo to the Commissioners Court recommending eliminating Business B from the process, which was marked "CONFIDENTIAL - Not for distribution" and contained the committee's rationale for its recommendation, discussions about each vendor, the dollar amounts of each bid, and other confidential information. At that time, Business B's bid was the highest of the four competing vendors, but it ultimately submitted the lowest final offer.

        (2)    Nealy obtained and provided a second internal Dallas County memo marked "Confidential - Not for Distribution," issued by the DCRIIS selection committee to the Commissioners Court after each vendor submitted its BAFO. Among other information, the memo contained the committee's scoring summary of the four finalists' bids and each of their BAFO pricing.

8.    In October of 2007, **Campbell** moved out of Texas and no longer had any business with Dallas County. He continued to work with Business A on matters unrelated to Dallas County.

9.    At all times relevant to the conspiracy, Dallas County, Texas was a political subdivision of the State of Texas. Dallas County received benefits in excess of $10,000

Factual Resume – Page 6 of 7

in each of the consecutive fiscal one-year periods beginning October 1, 2000, and continuing through October 1, 2010, under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance.

10. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case or of **Campbell's** knowledge of and participation in those facts and events. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support **Campbell's** guilty plea to Count One of the indictment.

I have read (or had read to me) this Factual Resume and have carefully reviewed every part of it with my attorney. I fully understand it and I swear that the facts contained herein are true and correct.

_____    6/29/15
CHRISTIAN LLOYD CAMPBELL         Date
Defendant

I am the defendant's counsel. I have carefully reviewed every part of this Factual Resume with my client. To my knowledge and belief, my client's decision to execute this Factual Resume is an informed and voluntary one.

_____    6/29/15
SHAMOIL T. SHIPCHANDLER           Date
Defendant's Attorney

_____    6/29/15
WALT M. JUNKER                    Date
Assistant United States Attorney

Factual Resume – Page 7 of 7